# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PEDRO CARTAGENA,** | : | Civil No. 1:17-CV-742 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | (Magistrate Judge Carlson) |
| **SERVICE SOURCE, INC.,** | : | |
| Defendants | : | |

## MEMORANDUM OPINION AND ORDER

### I. Statement of Facts and of the Case

Ideally, discovery in civil litigation is a smooth, swift and symmetrical process which leads to the full factual development of a dispute and allows all parties to make informed decisions regarding the course of litigation based upon a common body of information. Where that smooth symmetry breaks down, the Federal Rules of Civil Procedure provide that the party who is compelled to expend additional time and resources securing discovery may be entitled to the recovery of their costs and fees associated with procuring that discovery. In this case we are called upon to address a motion seeking to recover costs associated with delayed discovery. (Doc. 35.) This motion arises in the context of an employment discrimination, sexual harassment action brought by Pedro Cartagena against his employer, Service Source, Inc.

The history of this litigation reveals repeated efforts by the plaintiff over seven months to secure complete compliance with documentary discovery in the face of halting, and occasionally contradictory, responses by the defendant. Plaintiff began this documentary discovery by demanding records from the defendant in August of 2017. When the defendant responded to these discovery demands, their initial production failed to address fully several categories of material sought by the plaintiff. Plaintiff's counsel notified the defendant of these deficiencies on October 27, 2017, but further disclosures were not forthcoming. Therefore, on November 30, 2017, plaintiff's counsel wrote to the court requesting a conference to discuss discovery delinquencies. (Doc. 20.) That discovery conference took place on December 14, 2017, (Doc. 24), and in the wake of this conference the court "**ORDERED** that Defendant shall provide supplemental discovery responses to Plaintiff, as indicated in their December 12, 2017 letter (*doc. 23*), by no later than December 22, 2017." (Doc. 25.)

Notwithstanding this direction from the court, on January 15, 2018, plaintiff's counsel again wrote to the court reporting discovery deficiencies, including a particularly puzzling deficiency, the failure of the defense to produce records which the plaintiff knew existed since they consisted in part of documents received by the plaintiff from the defendant prior to the outset of this litigation and disclosed by the

2

plaintiff in the course of the lawsuit. (Doc. 26.) In short, the plaintiff insisted that the defendant's document disclosures were inadequate, in part, because the plaintiff had already disclosed some documents prepared by the defendant which the defendant claimed no longer existed. This case was then referred to us for resolution of these discovery issues, (Doc. 27), and we held a discovery conference call on January 19, 2018. (Doc. 28.) At that time the defendant represented that all of the documents sought by the plaintiff had been destroyed or otherwise disposed of, and we granted the plaintiff leave to conduct limited discovery into the facts and circumstances which caused this information to be unavailable. (Doc. 29.)

Relying upon the representation that no documents existed, plaintiff's counsel then conducted a series of depositions which led to a disappointing disclosure—there were in fact additional documents in the defendant's possession which were responsive to these discovery demands. This disclosure, which contradicted past representations made by the defendant, came in March of 2018, some seven months after the plaintiff first propounded his discovery demands. This belated disclosure led to yet another conference with counsel and a further order directing the defendant to correct and supplement its disclosures. (Docs. 31 and 32.) The parties represent that, in the wake of this action between March 1 and April 6, 2018, the defendant produced some 419 documents, comprising approximately 550 pages of

3

previously undisclosed material which was responsive to the plaintiff's August 2017 discovery demands.

It is against this factual backdrop that the plaintiff has filed the instant motion to compel and for sanctions. (Doc. 35.) The specific sanction sought by plaintiff's counsel is the reimbursement of $2,500 in attorney's fees, representing 10 hours of work at an hourly rate of $250, time and effort expended over this seven-month span securing full compliance with these discovery demands.

This motion is fully briefed by the parties and is, therefore, ripe for resolution. For the reasons set forth below, the motion will be GRANTED.

**II.     Discussion**

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

> (a) Motion for an Order Compelling Disclosure or Discovery
> (1) In General. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . .

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides that:

4

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P., Rule 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Therefore, a court's decisions regarding the conduct of discovery, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). Likewise, discovery sanction decisions rest in the sound discretion of the court. Grider v. Keystone Health Plan Cent., Inc., 580 F.3d 119, 134 (3d Cir. 2009).This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. For example, Rule 37 of the Federal Rules of Civil Procedure provides that: "If a party . . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders," and specifies an array of available sanctions. Fed. R. Civ. P. 37(b)(2)(A). In addition to these specifically identified sanctions, the rule also provides that: "Instead of or in addition to these sanctions, the court *must* require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or

6

other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3)(emphasis added). Likewise Rule 37(a)(5) calls for payment of attorney's fees relating to compelled discovery practice, and provides that the party whose non-disclosure or incomplete disclosure required litigation of a motion to compel:

> [M]ust . . . pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> **(i)** the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> **(ii)** the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> **(iii)** other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5).

Thus, by its terms Rule 37 seems to call for the imposition of attorney's fees in discovery litigation, unless the position of the party who failed to make discovery was "substantially justified." Therefore, as a threshold matter in ruling on this sanctions matter, we must make a determination regarding: (1) whether there was a failure of discovery and (2) whether the conduct of a party that is alleged to have failed in some discovery obligation was substantially justified.

In the instant case, we find at the outset that there was a failure of discovery by Service Source, which initially failed to produce records, then informed its own

counsel that the records did not exist, before its own employee-deponent identified undisclosed documents, compelling a supplemental production of material 7 months after these discovery demands were first propounded upon the defendant. We also conclude that Service Source has not carried its burden of showing that its failure to make timely disclosure of these records was substantially justified. On this score, we accept the representation of counsel that:

> When counsel for ServiceSource represented to the Court that it was no longer in possession of certain documents, this was done in reliance on the client's representations. As soon as it became apparent that the documents in question in fact had not been deleted, ServiceSource worked diligently to gather the documents and provide them to counsel, who then quickly turned around responsive, non-privileged documents in its March and April 2018 supplemental productions.

(Doc. 39, p. 5.)

This representation, in our view, reflects absolutely appropriate conduct by counsel, who were placed in a difficult position by their client, but represents a lack of attention to evidentiary detail by Service Source which we cannot describe as substantially justifying the delay in production of this material. Instead, Service Source simply acknowledges that its first response was incorrect, and its subsequent discovery of additional documents confirms that a more diligent search could locate these materials. Therefore, finding both that there was a failure of discovery and that Service Source has not shown that its conduct was substantially justified, we

conclude that Cartagena has made the showing necessary for a fees award.

In this case Cartagena seeks a fees award of $2,500, representing 10 hours of legal work, at an hourly rate of $250. Where an aggrieved party seeks the recovery of costs, expenses or attorney's fees, typically "[t]he starting point for a determination of attorney's fees, the lodestar calculation, is the product of the number of hours reasonably expended . . . times an hourly fee based on the prevailing market rate." Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 195 (3d Cir. 1988); see also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The party seeking fees bears the burden of producing "sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered . . . ." Knight v. Drye, 2009 U.S. Dist. LEXIS 82369 (M.D. Pa. Sept. 10, 2009) (quoting McCutcheon v. America's Servicing Co., 560 F.2d 143, 150 (3d Cir. 1990). See also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986) (party seeking fees has the initial burden of presenting evidence that the claimed rates and time expended are reasonable).

In the more familiar setting of fee-shifting awards, the Third Circuit has instructed that determining a reasonable hourly rate generally "is calculated according to the prevailing market rates in the relevant community." Loughner v.

9

Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001); see also Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 705 (3d Cir. 2005) (in most cases, the relevant market rate is the prevailing rate in the forum of the litigation). A court must not make a finding of reasonableness based on its own "generalized sense" of appropriateness, but instead "must rely on the record." Evans v. Port Auth. of N.Y. and N.J., 273 F.3d 346, 361 (3d Cir. 2001) (quoting Smith v. City of Phila. Housing Auth., 107 F.3d 223, 225 (3d Cir. 1997)). Courts are to "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001); Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). The party seeking fees "bears the burden of establishing by way of satisfactory evidence, 'in addition to [the] attorney's own affidavits,' . . . that the requested hourly rates meet this standard." Washington v. Philadelphia Cty. Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996) (citing Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)).

With respect to calculating the number of hours reasonably expended, the court "should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" Public Int.

Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995) (internal citation omitted); see also Dellarciprete, 892 F.2d at 1183 ("The district court should exclude hours that are not reasonably calculated."). In general, hours are not considered to have been reasonably expended "if they are excessive, redundant, or otherwise unnecessary." Id. The court may permissibly deduct hours from the fee award if the attorney inadequately documents the hours claimed. Id.

Once the petitioning party has made the preliminary showing described above, "the resulting product is presumed to be the reasonable fee to which counsel is entitled." Id. The burden then shifts to the party opposing the claimed fees by making specific objections to the proposed fee by way of an affidavit or brief. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). Upon consideration of the opposing party's objections, the district court enjoys substantial discretion to adjust the lodestar and ultimate fee downward. Id.

One other consideration guides us when calculating attorneys' fees as monetary sanctions for alleged litigation misconduct. In addition to the traditional lodestar analysis, we note that in the context sanctions – unlike in the more familiar fee-shifting context where a party is entitled to reasonable attorneys' fees and costs as a prevailing party – the court may only impose a sanction that represents "the minimum that will serve to adequately deter the undesirable behavior" that

11

precipitated the sanction. Doering, 857 F.2d at 194 (citation omitted).

Applying this formula, we first find that the hourly rate proposed by plaintiff's counsel, $250, is fitting and appropriate. In fact:

> Applying this benchmark, we find that our own assessment of fee award hourly rates approved by the courts in this district within the past two years in complex litigation suggests that highly experienced attorneys of plaintiff counsels' background in this particular legal marketplace typically command a fee rate of between $250 and $325 per hour in such complicated cases. See e.g., Evankavitch v. Green Tree Servicing, LLC, No. 3:12CV2564, 2014 WL 4437645, at *2 (M.D. Pa. Sept. 9, 2014), appeal dismissed (Sept. 29, 2015) ($315); Summit Sheet Metal, LLC v. Sheet Metal Workers' Int'l Ass'n, No. 3:CV-13-1623, 2015 WL 163342, at *1 (M.D. Pa. Jan. 13, 2015) reconsideration denied sub nom. Summit Sheet Metal, LLC v. Sheet Metal Workers' Int'l Ass'n, Local Union No. 44, No. 3:CV-13-1623, 2015 WL 672398 (M.D. Pa. Feb. 17, 2015) ($305 per hour); Wallace v. Powell, 301 F.R.D. 144, 167 (M.D. Pa. 2014) ($300); Beattie v. Line Mountain Sch. Dist., No. 4:13-CV-02655, 2014 WL 3400975, at *9 (M.D. Pa. July 10, 2014)($250 to $325 per hour); J.S. ex rel. Snyder v. Blue Mountain Sch. Dist., No. 3:07CV585, 2014 WL 1321116, at *2 (M.D. Pa. Mar. 31, 2014)(hourly rate of $300); Lukawski v. Client Servs., Inc., No. 3:12-CV-02082, 2013 WL 6154544, at *3 (M.D. Pa. Nov. 22, 2013)($300 per hour rate).

Ruehl v. S.N.M. Enterprises, Inc., No. 1:15-CV-168, 2018 WL 3495131, at *6 (M.D. Pa. July 20, 2018). Thus, the hourly rate claimed here is a conservative rate which falls within the spectrum of reasonable rates previously approved by this court. We further conclude that, for a discovery dispute which has spanned 7 months, entailed frequent communications between counsel, involved three telephonic conferences and resulted in the preparation of a motion to compel and for

sanctions, the total number of hours of work claimed by plaintiff's counsel—10 hours—is also entirely appropriate and reflects a conservative measure of time expended on these discovery issues.

In fact, the defendant does not appear to cavil about either the hourly rate or the number of hours which the plaintiff's counsel claims to have expended. Instead, the defense argument in opposition to the motion seems to be premised largely upon the notion that discovery has now been made and, therefore, the plaintiff has not suffered any appreciable harm. In our view, there are several problems with this proposition as an excuse from any sanctions whatsoever. First, by their terms the rules governing discovery impose an on-going obligation of complete and timely discovery upon parties. Therefore, it has long been held that an unreasonable delay in producing discovery may warrant sanctions. <u>Aerwey Labs., Inc. v. Arco Polymers, Inc.</u>, 90 F.R.D. 563, 565 (N.D. Ill. 1981)(6-month delay attorney's fees awarded). Furthermore, the defense argument fails to fully take into account the truism that justice delayed may be justice denied. In the same vein, discovery unreasonably delayed may often be discovery denied since the delay in providing some discovery may hobble counsel's efforts to efficiently marshal the facts by causing counsel to conduct additional discovery without the benefit of a fulsome factual record. Moreover, this argument does not recognize that the discovery which

was eventually obtained was in large measure a result of plaintiff's counsel's persistence, and counsel's unwillingness to accept what we now know to have been an incorrect and incomplete initial response from Service Source. Therefore, we decline the invitation to wholly excuse this conduct simply because discovery was eventually made. Further, given the very conservative and modest scope of the plaintiff's fee petition, and the on-going nature of the conduct which compelled this discovery and sanctions litigation, we find that a fees award of $2,500 represents "the minimum that will serve to adequately deter the undesirable behavior" that precipitated the sanction. Doering, 857 F.2d at 194 (citation omitted).

Finally, we accept the proposition that defense counsel made appropriate inquiries of their client, and were initially—and erroneously—informed that the requested documents did not exist. Service Source persisted in this claim for some months until plaintiff's diligence unearthed evidence which rebutted this claim. In these circumstances, in the exercise of our discretion, these fees will be levied as a sanction against the defendant, and not counsel who simply reported the inaccurate information they had received from their client.

An appropriate order follows:

### III. <u>Order</u>

AND NOW, this 6th day of September, 2018, pursuant to Rule 37 of the Federal Rules of Civil Procedure and in accordance with the foregoing Memorandum, IT IS ORDERED that the plaintiff's Motion for Sanctions (Doc. 35), is GRANTED and the defendant Service Source, Inc., is ORDERED to pay fees totaling $2,500 to plaintiff's counsel within 30 days of today's date.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
