# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PEDRO CARTAGENA,** | : | CIVIL ACTION NO. 1:17-CV-742 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| **SERVICE SOURCE, INC.,** | : | |
| Defendant | : | |

## MEMORANDUM

Plaintiff Pedro Cartagena ("Cartagena") filed four pretrial motions (Docs. 52-55) *in limine* seeking to exclude certain testimony and evidence at his upcoming civil rights trial. Defendant Service Source, Inc. ("Service Source"), opposes each motion.

## I. Factual Background & Procedural History

Service Source provides food and dining services to members of the United States military at Fort Indiantown Gap in Annville, Pennsylvania. (Doc. 1 ¶ 13). In 2007, Service Source hired Cartagena to work in the dining hall and to provide "cleaning and organizational services." (Id. ¶¶ 12-14). In accordance with federal law and contract obligations, Service Source primarily employs adults with mental health-related disabilities. (Id. ¶ 18).

Various individuals purportedly supervised Cartagena and the dining hall generally, including operations managers and "lower level supervisors." (Id. ¶¶ 16-17). Multiple female coworkers allegedly sexually harassed Cartagena by groping and improperly touching him and by sending sexually charged text messages and

nude images to his cell phone.  (Id. ¶ 19(a)-(b)).  This harassing behavior apparently lasted for a period of several years prior to the filing of the instant action.  (Id. ¶ 19). Cartagena claims that his frequent complaints of sexual harassment were either insufficiently addressed by management at all levels or ignored completely.  (Id. ¶¶ 19(c), 20-22).

Cartagena filed a dual charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").  (Id. ¶ 5; see also Doc. 55 at 5-6).  After receiving a right-to-sue letter, (Doc. 1 ¶ 5), Cartagena commenced this litigation.  His complaint raises four counts against Service Source for creation of a hostile work environment through sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 and the Pennsylvania Human Relations Act, 43 PA. STAT. AND CONS. STAT. ANN. §§ 951-963 (Counts I and II, respectively); negligent supervision (Count III); and intentional and negligent infliction of emotional distress (Count IV). Trial is scheduled for February 2019.  Cartagena moves *in limine* to exclude at trial certain evidence and testimony under the Federal Rules of Evidence.  The motions are fully briefed and ripe for disposition.

## II. Discussion

Cartagena filed four motions *in limine* in advance of his upcoming civil rights trial.  He seeks to prevent Service Source from introducing evidence or testimony relating to: (1) his employment disciplinary record; (2) his criminal history; (3) his history of drug and alcohol use; and (4) any investigations and

outcomes of his administrative complaints that preceded this civil action. We will address Cartagena's motions *seriatim*.

### A. Employment Disciplinary Record

Cartagena first moves to exclude evidence or testimony pertaining to any complaints or disciplinary action taken against him during the course of his employment with Service Source as impermissible character evidence. (Doc. 52). Service Source argues that this evidence is admissible for the non-propensity purpose of negating its discriminatory intent. (Doc. 57 at 2-3).

Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). An exception to this rule provides that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2). Rule 404(b) applies to criminal and civil cases alike. Ansell v. Green Acres Contracting Co., 347 F.3d 515, 520 (3d Cir. 2003) (citing FED. R. EVID. 404 advisory committee's note).

"Rule 404(b) is a rule of general exclusion," precluding other-act evidence unless the proponent can show a proper purpose other than propensity. United States v. Repak, 852 F.3d 230, 240 (3d Cir. 2017) (quoting United States v. Caldwell, 760 F.3d 267, 276 (3d Cir. 2014)). Rule 404(b) carries "no presumption of admissibility," and thus the proponent of other-act evidence bears the burden of

3

demonstrating its applicability.  Caldwell, 760 F.3d at 276 (internal quotation marks and citation omitted).

Admission of other-act evidence under Rule 404(b) requires satisfaction of four distinct steps.  Id.  First, the proponent of the other-act evidence must identify a proper, non-propensity purpose that is "at issue" in, or relevant to, the case at hand.  Id.  Second, after identifying a proper non-propensity purpose that is "at issue," the proponent must carefully articulate how the other-act evidence is relevant to proving that purpose without relying on propensity.  Id.  This step requires the proponent to set forth a "chain of inferences" that connects the other-act evidence to the proper purpose, "no link of which is a forbidden propensity inference."  Id. at 277 (quoting United States v. Davis, 726 F.3d 434, 442 (3d Cir. 2013)).  Third, the court must perform a Rule 403 balancing analysis to ensure that the probative value of the other-act evidence is not substantially outweighed by its "inherently prejudicial nature[.]"  Id. at 277 (citation omitted).  Finally, if requested, the court must provide a proper limiting instruction.  Id. (citations omitted).  This process demands "careful precision" from both the proponent of the other-act evidence and the trial judge determining its admissibility.  United States v. Brown, 765 F.3d 278, 291 (3d Cir. 2014) (citing Caldwell, 760 F.3d at 274).

Cartagena alleges that Service Source failed to address sexual harassment from female coworkers resulting in a hostile work environment.  (Doc. 1 ¶¶ 19, 25, 28; see also Doc. 61 at 2).  To prevail on a hostile work environment claim against his employer, Cartagena must prove that (1) he suffered intentional discrimination on the basis of sex, (2) the discrimination was severe or pervasive, (3) he was

4

detrimentally affected by the discrimination, (4) such discrimination would detrimentally affect a reasonable person in similar circumstances, and (5) the existence of *respondeat superior* liability. Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013) (citation omitted). An employer may be held directly liable for sexual harassment perpetrated by the victim's non-supervisory coworker "only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104-05 (3d Cir. 2009); see also Vance v. Ball State Univ., 570 U.S. 421, 427 & n.1 (2013). When the harassing employee is the plaintiff's supervisor, the plaintiff must establish the employer's vicarious liability. Vance, 570 U.S. at 427; Huston, 568 F.3d at 104.

Service Source proffers evidence of Cartagena's disciplinary history to prove the absence of discriminatory intent. (Doc. 57 at 3). Intent is a non-propensity purpose for character evidence. FED. R. EVID. 404(b)(2). However, Service Source's intent is not at issue in this case. Hostile work environment claims focus on the discriminatory intent of the offending supervisor or coworker—the employer is not presumed to have been the genesis of the discrimination. Rather, the fifth element of a hostile work environment claim turns on the reasonableness of the employer's preventative and corrective measures to address the harassment. See Vance, 570

5

U.S. at 427; Huston, 568 F.3d at 104. Cartagena's negligent supervision claim likewise does not implicate matters of discriminatory intent.[1]

Service Source also fails at step two. The second step in the Rule 404(b) process is crucial. Caldwell, 760 F.3d at 276. The proponent must do more than merely "pigeonhole" the evidence into one of the categories permitted by Rule 404(b)(2); the proponent must demonstrate that the other-act evidence actually "prove[s] something other than propensity." Id. (alteration in original) (citation omitted). Thus, "[i]n proffering such evidence, the [proponent] must explain how it fits into a chain of inferences—a chain that connects the evidence to a proper purpose," free of any propensity inference. Davis, 726 F.3d at 442 (citing United States v. Sampson, 980 F.2d 883, 887 (3d Cir. 1992)).

Assuming *arguendo* that intent as hereinabove described is at issue, the proffered disciplinary records reveal no connection to the sexual harassment allegations. Service Source attached three documents to its brief in opposition, to wit: an annual evaluation dated January 22, 2016; an employee counseling form dated December 20, 2014; and an annual evaluation dated July 31, 2008. (Doc. 57-1). Together, these documents suggest that Cartagena struggled with tardiness and unexcused absences as well as managing frustration and engaging in occasional teasing. (Id. at 4, 7-8, 10). Absent entirely from these documents is any information relevant to the sexual harassment undergirding Cartagena's hostile work

---

[1] Service Source cabins the scope of the proffered character evidence to Counts I through III of the complaint. (See Doc. 57 at 3).

6

environment and negligent supervision claims or Service Source's efforts to address said harassment. (See id.) On this record, the court is compelled to conclude that Cartagena's employment disciplinary record is being offered for an impermissible propensity purpose. Because Service Source fails at steps one and two, we need not engage in Rule 403 balancing. However, Service Source is not precluded from introducing evidence or testimony regarding the general policies and procedures governing the management and discipline of its employees.

B.     **Criminal History**

Cartagena moves pursuant to Federal Rule of Evidence 609 to exclude testimony and evidence of his 2003 arrest and conviction for impersonating a police officer. (Doc. 53). Service Source represents that this evidence would be proffered in the limited context of testimony by its expert, Barbara Long, M.D., Ph.D. ("Dr. Long"). (Doc. 59 at 3). According to Service Source, Dr. Long relied upon Cartagena's 2003 conviction in drafting her psychiatric evaluation expert report. (Id.) Dr. Long only referenced the conviction when briefly summarizing Cartagena's "legal history," noting that he received mandatory mental health treatment in connection with his conviction for impersonating a police officer.[2] (Doc. 59-1 at 6).

---

[2] Dr. Long also notes in her report that Cartagena was convicted of transporting cocaine into the United States from Guatemala. (See Doc. 59-1 at 6). Service Source fails to explain how this conviction relates to Dr. Long's expert opinion appertaining Cartagena's mental illness and hallucinations and does not seek to admit this conviction for impeachment purposes. (See Doc. 59). Accordingly, Service Source may not introduce any evidence or testimony of this supposed narcotics conviction.

7

In rendering an expert opinion, the expert may rely on "facts or data in the case that the expert has been made aware of or personally observed." FED. R. EVID. 703. The facts or data underlying the opinion need not be independently admissible so long as experts in the particular field "would reasonably rely on those kinds of facts or data in forming an opinion on the subject." FED. R. EVID. 703. The party proffering the expert opinion may only disclose to the jury the otherwise inadmissible facts or data underlying the opinion if "their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." FED. R. EVID. 703.

As a threshold matter, neither party identifies an independent admissible purpose for the evidence of Cartagena's 2003 conviction. The evidence, on its face, appears to contravene Rule 404's prohibition against introducing evidence of a crime or other act to prove a person's character and that the person acted in conformity therewith on a particular occasion. See FED. R. EVID. 404(b)(1). And Rule 609 generally prohibits introduction of this evidence for impeachment purposes as the conviction is more than 10 years old. See FED. R. EVID. 609(b).

Introduction of this evidence is likely to prejudice the jury against Cartagena because he was convicted of impersonating a police officer. The conviction's probative value is substantially diminished by the fact that it occurred 15 years ago, long before the alleged sexual harassment in this case occurred. Moreover, there is no indication that Dr. Long specifically relied on the circumstances of this conviction in formulating her opinion that Cartagena suffers from "the presence of recurrent depressive episodes with psychotic features (delusions, possible auditory

hallucinations) that happen only during these episodes." (Doc. 59-1 at 13). Dr. Long notes that she relied on "the psychiatric evaluation and testing," but does not clarify whether she is referencing the 2004 psychiatric evaluation,[3] the March 1, 2018 expert report produced by Dr. Pogos H. Voskanian, or the psychiatric evaluation Dr. Long conducted in creating her expert report. (See id. at 8-10, 13; Doc. 65 at 2).

For all of these reasons, we cannot conclude that the probative value of Cartagena's 2003 conviction substantially outweighs its prejudicial effect. Dr. Long is prohibited from testifying about the 2003 conviction if she did not rely on it in reaching her expert opinion. To the extent Dr. Long did consider Cartagena's 2003 hallucination episode, she may not testify as to the nature and circumstances of the conviction but may note that she relied on medical records indicating Cartagena suffered from hallucinations as early as 2003.

### C. History of Drug or Alcohol Use

Cartagena moves to exclude any evidence or testimony regarding drug or alcohol use throughout his life as impermissible character evidence under Federal Rule of Evidence 404. (See Doc. 54). Service Source clarifies that it only seeks to introduce this evidence for impeachment purposes and to assess damages for Cartagena's emotional distress claim. (See Doc. 58).

The Federal Rules of Evidence generally prohibit the introduction of evidence of a person's character or character trait to prove the person acted in

---

[3] A 2004 psychiatric evaluation indicates that Cartagena was acting on a hallucination when he committed the crime in connection with his mental illness. (Doc. 65 at 2).

conformity therewith on a particular occasion. FED. R. EVID. 404(a)(1). However, evidence of a witness's character may be admitted to impeach that witness's credibility. FED. R. EVID. 404(a)(3) (citing FED. R. EVID. 607-09). When proffered impeachment evidence would ordinarily be barred under Rule 404(a), the district court "must weigh the probative value of . . . impeachment evidence against its potential prejudicial impact." United States v. Pantone, 609 F.2d 675, 681 (3d Cir. 1979); cf. United States v. Greenidge, 495 F.3d 85, 99 (3d Cir. 2007).

Service Source asserts that Cartagena's current use of prescription drugs to treat his mental illness and physical pain, combined with his purported past abuse of drugs and alcohol, "can be counterproductive and may affect his ability to perceive and recall the event[s] he claims involve[d] sexual harassment." (Doc. 58 at 3). In support of this position, Service Source claims that Dr. Long "explain[s] that given his use of substances, [Cartagena's] memory and mental capacity may be at issue." (Id.) But Dr. Long's expert report is devoid of any indication that Cartagena's memory is impaired by substance abuse.

The report details that Cartagena used cocaine and abused alcohol when he was in his twenties but that he has not struggled with substance abuse since then. (Id. at 6, 13). In June 2017, a female coworker purportedly sat on Cartagena's lap causing injury to his arthritic knee.[4] (Id. at 2). Cartagena's doctor prescribes him

---

[4] Cartagena's complaint filed April 26, 2017, indicates that the alleged sexual harassment occurred over a period of years and ended in 2016. (Doc. 1 ¶ 19). It is unclear whether this incident occurred in June 2016 or after the filing of the complaint. For purposes of this opinion, we will assume the incident occurred in June 2017.

10

nonsteroidal anti-inflammatory drugs and oxycodone for pain arising from this knee injury which he takes daily. (Id. at 6, 13). Dr. Long opines that Cartagena "*may* currently have a substance dependency or addiction to oxycodone" which "*may* complicate his psychiatric picture." (Id. at 14 (emphasis added)). However, Dr. Long at no point states that this potential dependency impacts his memory. *Per contra*, following a two-day psychiatric interview and mental status examination, Dr. Long described Cartagena's presentation as follows:

> Speech was logical and goal-directed without looseness of associations, flight of ideas, thought blocking, or other problems of thought flow. Thought content was responsive to questions without evidence of delusions or elevated suicide drive.
>
> Concentration throughout the testing and interview was unimpaired. Serial three subtraction was completed without error. *Short-term, immediate, and long-term memory was good.*

(Id. at 11) (emphasis added). The report provides no basis to infer that Cartagena's drug or alcohol use has affected his memory or tendency to testify truthfully in this case.

We cannot conclude at this juncture that Cartagena's history of drug and alcohol use is probative of his truthfulness or untruthfulness for impeachment purposes. Admitting testimony or evidence of a decades old cocaine and alcohol habit and the more recent, lawful prescription drug use poses a high risk of unfairly prejudicing the jury against Cartagena. At present, Service Source's assertion that Cartagena's "use of substances" may impact his memory is mere speculation. Cartagena may be cross-examined about his memory or truthfulness as any other

11

witness, but without additional evidence of probative value, Service Source may not reference his history of drug and alcohol use for impeachment purposes.

Service Source also argues that Cartagena's drug and alcohol use is relevant to whether he suffered emotional distress from the alleged sexual harassment. Service Source fails to specify exactly how such evidence bears on Cartagena's emotional distress claim. (<u>See</u> Doc. 58 at 4). Cartagena supposedly represented to Dr. Long that "he did not know if he had been emotionally damaged by the alleged conduct of [his female coworkers]." (Doc. 58-1 at 2). Dr. Long stated that Cartagena's treating physician notes "cover the interval of the alleged sexual harassment and reveal no complaints of any anxiety or other emotional distress due to alleged sexual harassment." (<u>Id.</u> at 7). Service Source is free to seek admission of such evidence pursuant to the Federal Rules of Evidence. However, Service Source has not explained why Cartagena's use of oxycodone since June 2017 is probative of whether he suffered emotional distress from the alleged sexual harassment he suffered "[f]or a period of several years through 2016." (Doc. 1 ¶ 19 (emphasis omitted); <u>see</u> <u>also</u> Doc. 58 at 3). We will grant Cartagena's motion *in limine* to exclude testimony and evidence of his drug and alcohol use without prejudice to Service Source's right to raise the issue at trial subject to a more persuasive demonstration of relevance.

### D. Administrative Complaints and Investigations

Cartagena moves to exclude presentation to the jury of "any investigations, findings, decisions, [or] terminations" by the EEOC and PHRC related to

Cartagena's claims.[5] (Doc. 55 at 6). The decision of whether an EEOC administrative record or determination is admissible is "within the sound discretion of the trial court." See Coleman v. Home Depot, Inc., 306 F.3d 1333, 1345 (3d Cir. 2002). The district court should determine if such evidence is more probative than prejudicial pursuant to Federal Rule of Evidence 403 based on "the proof value of the particular report as and when offered at trial." Id.; see also Walton v. Eaton Corp., 563 F.2d 66, 75 & n.12 (3d Cir. 1977). Courts within the Third Circuit regularly exclude investigative and evaluative EEOC and PHRC findings. Waters v. Pa. Human Relations Comm'n, No. 1:13-CV-2652, 2017 WL 24670, at *3 (M.D. Pa. Jan. 3, 2017) (collecting cases).

Service Source expressly states that it neither intends to introduce the underlying facts of the EEOC or PHRC's analysis nor evidence of the termination of both investigations by the respective agencies. (Doc. 60 at 3). Rather, Service Source represents that it only intends to "reference the facts on which [Cartagena] based his original EEOC and PHRC complaint(s)" to highlight discrepancies between those facts and the sexual harassment allegations underlying the instant civil suit. (Id.) Cartagena raises no objection to the introduction of such evidence. We will grant Cartagena's motion to exclude any evidence or testimony pertaining to the EEOC and PHRC's investigative or evaluative findings related to his claims.

---

[5] Cartagena purports to attach the EEOC's right-to-sue letter to his motion *in limine*. (Doc. 55 at 6). However, no such letter was ever filed on the docket.

However, Service Source may introduce evidence of the facts underlying Cartagena's administrative complaints subject to the Federal Rules of Evidence.

### III. Conclusion

The court will grant Cartagena's motions (Docs. 52-55) *in limine*. An appropriate order shall issue.

        /S/ CHRISTOPHER C. CONNER
        Christopher C. Conner, Chief Judge
        United States District Court
        Middle District of Pennsylvania

Dated:    January 14, 2019