# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PEDRO CARTAGENA,** | : | CIVIL ACTION NO. 1:17-CV-742 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| **SERVICE SOURCE, INC.,** | : | |
| Defendant | : | |

## **MEMORANDUM**

Plaintiff Pedro Cartagena ("Cartagena") commenced this action against his employer, Service Source, Inc. ("Service Source"), asserting that Service Source is liable for creation of a hostile work environment through sexual harassment. This memorandum addresses several substantive issues raised by the parties during the pretrial conference.

## I. Factual Background & Procedural History

Cartagena alleges that multiple female coworkers sexually harassed him over a period of years. (Doc. 1 ¶ 19(a)-(b)). Service Source purportedly failed to address his frequent complaints of sexual harassment. (Id. ¶¶ 19(c), 20-22). Cartagena filed a dual charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). (Id. ¶ 5; see also Doc. 55 at 5-6). After receiving a right-to-sue letter, (Doc. 1 ¶ 5), Cartagena commenced this litigation. His complaint raises four counts against Service Source for creation of a hostile work environment through sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-

2 and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. AND CONS. STAT. ANN. §§ 951-963 (Counts I and II, respectively); negligent supervision (Count III); and intentional and negligent infliction of emotional distress (Count IV).

The parties did not engage in Rule 12 or Rule 56 motion practice. Trial is scheduled to begin February 4, 2019. The court convened a pretrial conference with the parties and counsel of record on January 16, 2019. The court ordered letter briefing on several substantive matters raised by the parties during the conference.

## II. Discussion

Service Source raises, for the first time in its pretrial memorandum, several substantive issues that may narrow the claims for trial. Specifically, Service Source argues that (1) the statute of limitations significantly winnows the evidence Cartagena may present on his hostile work environment claims, (2) any allegations of sexual harassment that post-date the instant complaint should be excluded from trial, (3) Cartagena's negligent supervision claim is preempted by statute, and (4) his sexual harassment claim fails as a matter of law. Cartagena opposes Service Source's statute of limitations argument and its request to preclude evidence of post-complaint incidents of sexual harassment. He also contends, over a defense objection, that Service Source's chief executive officer should be required to testify at trial. We will address these issues *seriatim*.

### A. Statute of Limitations

A plaintiff must file a charge of discrimination no later than 300 days "after the alleged unlawful employment practice occurred" when he or she concurrently files the charge with the EEOC and a state agency. 42 U.S.C. § 2000e–5(e)(1);

Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000). In Pennsylvania, a plaintiff must file an administrative complaint of discrimination with the PHRC within 180 days "after the alleged act of discrimination." 43 PA. STAT. AND CONS. STAT. ANN. § 959(h).

Under the continuing violation doctrine, a complaint of a discriminatory act that occurs outside the applicable limitations period may be deemed timely if (1) the plaintiff demonstrates a pattern of discriminatory acts that are not individually actionable and (2) the pattern of discriminatory acts "continues into the applicable limitations period." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165-66 (3d Cir. 2013) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002); O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006)). The doctrine does not apply to discrete and complete discriminatory actions—*e.g.*, termination, failure to promote, denial of transfer, or refusal to hire—which are independently actionable claims and are lost if not raised within the statutory period. Mandel, 706 F.3d at 165 (quoting Morgan, 536 U.S. at 113-14); O'Connor, 440 F.3d at 127 (citing Morgan, 536 U.S. at 113-14). To distinguish continuing violations from isolated occurrences, a court should consider the subject matter and frequency of the underlying discriminatory acts. Mandel, 706 F.3d at 166-67 (citations omitted).

Cartagena dual filed charges of discrimination with the EEOC and the PHRC on July 12, 2016.[1] (See Doc. 71 at 27; Doc. 85 at 1). To prevail on his Title VII and PHRA hostile work environment claims, Cartagena will have to prove, *inter alia*, that at least one discriminatory act occurred during the respective 300-day and 180-day statute of limitations periods preceding his July 12, 2016 filing. See Mandel, 706 F.3d at 165-66. Service Source argues that Cartagena "has not alleged any specific incident of harassment" that occurred within either limitations period. (Doc. 85 at 2, 4). On the present record, we are unable to determine whether Cartagena's claims are in fact time-barred.

Federal Rule of Civil Procedure 8(c) deems a statute of limitations bar to be an affirmative defense that must be pled in an answer to the complaint. See FED. R. CIV. P. 8(c). Nevertheless, a defendant may move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) where the complaint facially shows that the cause of action has not been timely filed. Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (citations omitted). Service Source properly preserved a statute of limitations defense in its answer. (Doc. 7 at 5). But it elected not to file a motion to dismiss the complaint or a motion for summary judgment, and the court is thus without any factual record upon which to make the determination Service Source now seeks.

---

[1] For the first time in a motion for sanctions, Cartagena represents that the July 12, 2016 filing with the PHRC was an "amended complaint" and that his first filing with the PHRC was dated April 2016. (Doc. 88 at 7). Service Source suggests that the PHRC received a questionnaire from Cartagena in April 2016. (Doc. 90 at 2). This factual discrepancy does not alter the court's conclusion *infra*.

Because application of the statute of limitations and continuing violation doctrine is naturally fact-intensive, we will deny the motion without prejudice to Service Source's right to reassert its motion at trial, if appropriate, pursuant to Federal Rule of Civil Procedure 50.

### B. Post-Complaint Incidents of Sexual Harassment

Service Source also seeks to preclude Cartagena from introducing evidence and testimony at trial of incidents of harassment that post-date the complaint filed in this matter on April 26, 2017. (Doc. 85 at 4). Service Source identifies two such incidents in its letter brief. In June 2017, a female coworker purportedly sat on Cartagena's knee causing physical injury, and, in January 2018, a female coworker allegedly touched Cartagena inappropriately on the shoulder. (See id.; Doc. 71 at 19, 24). In support of its position, Service Source argues that (1) Cartagena failed to file a supplemental complaint and (2) any post-complaint incidents are "isolated and sporadic acts" which are too far removed from the allegations in the complaint and not "severe or pervasive." (Id.)

Federal Rule of Civil Procedure 15(d) allows a party, subsequent to court approval, "to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." FED. R. CIV. P. 15(d). Courts should freely grant leave to file supplemental pleadings "when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the parties." Cash v. Wetzel, 8 F. Supp. 3d 644, 658 (E.D. Pa. 2014); see also Kounelis v. Sherrer, 396 F.

5

Supp. 2d 525, 529 (D.N.J. 2005); Medeva Pharma Ltd. v. Am. Home Prods. Corp., 201 F.R.D. 103, 104 (D. Del. 2001). The decision whether to permit a supplemental pleading is committed to the sound discretion of the district court. See Cash, 8 F. Supp. 3d at 658; Hassoun v. Cimmino, 126 F. Supp. 2d 353, 360 (D.N.J. 2000).

As a threshold matter, we construe Cartagena's letter briefing as a motion to serve a supplemental pleading under Rule 15(d). (See Doc. 84-1 at 10). Service Source received adequate notice of Cartagena's claims against it. The complaint clearly sets forth a cause of action for a hostile work environment premised on sexual harassment that spanned years of employment. (See Doc. 1). A plaintiff need not plead each and every act of discrimination that contributed to the alleged hostile work environment. See Roadcloud v. City of Philadelphia, No. 13-00777, 2014 WL 43759, at *5 (E.D. Pa. Jan. 6, 2014); Bahar v. Nw. Human Servs., No. 06-CV-3910, 2007 WL 320256, at *4 (E.D. Pa. Jan. 30, 2007). The alleged June 2017 and January 2018 incidents constitute additional occurrences or events of sexual harassment that may have contributed to the hostile work environment.

Moreover, Cartagena represents that the parties "engaged in full discovery" regarding the incidents of alleged discrimination that post-date the complaint. (Doc. 84-1 at 10). Service Source supposedly examined Cartagena during his deposition as to the alleged 2017 incident and sought discovery for events that post-dated the complaint. (Id. at 11). Service Source does not dispute these representations or argue that it was prejudiced in preparing for trial by Cartagena's failure to supplement his complaint. (See Doc. 85 at 4-5). And for the reasons discussed *supra*, resolution of Service Source's argument that these post-complaint

6

incidents are isolated acts and neither severe nor pervasive cannot be resolved absent a factual record. We will grant Cartagena leave to file a supplemental pleading setting forth factual allegations pertaining to these post-complaint events.

Any post-complaint incidents of sexual harassment also bear on the issue of employer liability. To prevail on a hostile work environment claim against his employer, Cartagena must prove that (1) he suffered intentional discrimination on the basis of sex, (2) the discrimination was severe or pervasive, (3) he was detrimentally affected by the discrimination, (4) such discrimination would detrimentally affect a reasonable person in similar circumstances, and (5) the existence of *respondeat superior* liability. Mandel, 706 F.3d at 167 (citation omitted). An employer may be held directly liable for sexual harassment perpetrated by the victim's non-supervisory coworker "only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104-05 (3d Cir. 2009); see also Vance v. Ball State Univ., 570 U.S. 421, 427 & n.1 (2013). Evidence that Cartagena continued to experience sexual harassment following the commencement of this case may be relevant to and probative of whether Service Source failed to take appropriate remedial action. We find that Cartagena is not precluded from presenting evidence and testimony of post-complaint allegations of sexual harassment in accordance with the Federal Rules of Evidence.

### C. Voluntary Dismissal of Counts

Service Source suggests that Count III for negligent supervision relies on the same set of facts as Cartagena's PHRA claim and is therefore preempted. (Doc. 70 at 8). Service Source also avers that Count IV for intentional infliction of emotional distress fails as a matter of law because the complaint does not allege that Service Source engaged in sexual harassment or took retaliatory action against Cartagena for turning down sexual propositions. (Id. at 8-9). In response, Cartagena moves to voluntarily dismiss Counts III and IV, contingent upon the court granting his motion *in limine* to preclude introduction of evidence or testimony concerning the dismissed counts at trial. (Doc. 81 at 1; see Doc. 81-1). Service Source opposes neither Cartagena's motion to dismiss Counts III and IV, nor his request to exclude evidence of the dismissed counts. (Doc. 85 at 1). The court will grant Cartagena's motion and request to exclude.[2]

### D. Testimony of Service Source's Chief Executive Officer

Federal Rule of Evidence 43 requires that a witness's testimony at trial be "taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise." FED. R. CIV. P. 43(a). A party may issue a subpoena to attend trial to a person "within 100 miles of where the person resides, is employed, or regularly transacts business in

---

[2] Cartagena styles Count IV of the complaint as one for "Intentional *and Negligent* Infliction of Emotional Distress." (Doc. 1 at 6 (emphasis added)). Neither party addresses a claim for negligent infliction of emotional distress in their respective pretrial memoranda or subsequent letter briefing, (see Docs. 70-71, 81, 85), and Cartagena moves to dismiss Count IV in its entirety, (Doc. 81 at 1).

8

person." FED. R. CIV. P. 45(c)(1)(A). During the pretrial conference, Service Source objected to its chief executive officer, Janet Samuelson ("Samuelson"), appearing as a witness, noting that Samuelson was deposed and that her deposition testimony should be sufficient. Cartagena contends that Samuelson's testimony is highly relevant and she should be required to appear at trial to testify. (Doc. 80 at 1). Service Source failed to respond to Cartagena's arguments. (See Doc. 85).

We see no reason why Samuelson should not be required to appear and testify at trial. Cartagena provided the court with emails to Samuelson identifying ongoing management issues and incidents of sexual harassment. (See Doc. 80-2). According to the emails, one female employee provided naked pictures of herself to Cartagena by cell phone and to various coworkers in hard copy format in the mess hall. (Doc. 80-2 at 5-8). Cartagena also submitted the transcript of Samuelson's deposition wherein counsel questioned Samuelson at length as to her interpretation of the emails and the course of action she took upon receiving them.[3] (See Doc. 80-1). This proffer clearly demonstrates that Samuelson possesses personal knowledge

---

[3] Cartagena points to the "apex doctrine" in support of his position. In deciding if the deposition of an individual at the 'apex' of a corporation or other entity is appropriate, district courts within the Third Circuit consider two factors: "1) whether the executive has personal, superior, or unique knowledge on the relevant subject; and 2) whether the information can be obtained in a less burdensome way, such as through lower-level employees or other discovery methods." In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prod. Liab. Litig., No. 2:13-MD-2436, 2014 WL 3035791, at *3 (E.D. Pa. July 1, 2014) (citations omitted); see also Pegley v. Roles, No. 17-CV-732, 2018 WL 572093, at *3 (W.D. Pa. Jan. 26, 2018) (collecting cases). As in the deposition context, we find Samuelson's personal knowledge of events underlying Cartagena's claims to be a persuasive reason for requiring her testimony at trial. See Pegley, 2018 WL 572093, at *3.

9

of facts underlying Cartagena's claims *sub judice*. and Service Source offers no compelling reason why she should not be required to testify in person in compliance with Federal Rules of Civil Procedure 43 and 45.

**III.    Conclusion**

The court will grant in part and deny in part the parties' various pretrial requests, as more fully explained hereinabove.  An appropriate order shall issue.


   /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    January 29, 2019